Mark A. Rinehart, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 3, 1978, before President Judge BOWMAN and Judges ROGERS and DISALLE, sitting as a panel of three.

*James E. Tarman,* with him *Roderick D. Gere,* for appellant.

*William J. Kennedy,* Assistant Attorney General, with him *Robert P. Kane,* Attorney General, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, July 26, 1978:

This is an appeal by Mark A. Rinehart (Claimant) from the decision of the Unemployment Compensation Board of Review which affirmed the referee's denial of benefits under Section 402(b)(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b)(1), on the grounds that Claimant had

voluntarily terminated his employment without cause of a necessitous and compelling reason. We affirm.[1]

Claimant had been employed as a recreational director from February to July, 1975, by St. Mary's Home for Children in Ambler, Pennsylvania (St. Mary's), where he lived in his own separate apartment on its grounds. In July, at his employer's urging, Claimant accepted the position of live-in child care worker which, in addition to his daytime duties, required him to be on call every night. When he accepted the new position, St. Mary's agreed to give him "adequate relief time," although it did not specify the nature and extent of that relief. St. Mary's initially allowed Claimant five hours of weekly relief time, from 5 o'clock P.M. to 10 o'clock P.M. on Thursdays, and when Claimant complained that this was insufficient, he was granted an additional five hours the Wednesday evening of every other week. Claimant testified that, as a live-in child care worker, he was charged with round-the-clock supervision of six adolescent boys, four of whom were on medication for behavioral problems. He further stated that often he had to rise twice nightly to deal with problems such as bed-wetting by students and that on some nights he got no sleep at all. He complained several times that the physical and mental stress of these arduous duties, from which he received an average of only 7½ hours of relief time per week, was having a harmful effect on his health, as evidenced by an increase in his cigarette use and coffee consumption, a decrease in appetite, bags under his eyes, and a growing inability to comprehend and retain even the simplest con-

---

[1] This case had its genesis in an interstate claim filed by Claimant in Boise, Idaho, which was his home and to which he returned after leaving St. Mary's. The only hearing was held before a hearing examiner of the Idaho Department of Employment. Only the Claimant appeared and testified.

·versations. He stated that he discussed the problem with two staff psychiatrists who agreed that he was not receiving adequate relief time. Despite his repeated complaints, St. Mary's refused to increase Claimant's relief time or hire another employee, so Claimant resigned.

Claimant contends that the physical and mental stress occasioned by his employer's refusal to grant him adequate relief time constituted compelling and necessitous reason for terminating his employment. We do not agree. In voluntary termination cases, the burden is upon the employee to prove that he had necessitous and compelling reason for leaving his employment. *Aluminum Company of America v. Unemployment Compensation Board of Review,* 15 Pa. Commonwealth Ct. 78, 324 A.2d 854 (1974). Further, when an employee accepts a position which he later quits, he admits the initial suitability of the position with respect to wages and conditions; and to demonstrate his entitlement to benefits, he must overcome that admission by showing a change in his job conditions or a deception by the employer making him unaware, when he entered the employment relationship, of conditions which he later alleges to be onerous. *Mosley v. Unemployment Compensation Board of Review,* 15 Pa. Commonwealth Ct. 447, 327 A.2d 199 (1974). Claimant has failed to meet this initial burden.

Claimant's testimony indicates that when he commenced working for St. Mary's as a recreational counselor, he immediately began training for the position of live-in child care worker. He was offered the position in early June, accepted it in July, and began working in August. From this, it is clear to us that Claimant commenced his duties as a live-in child care worker with his eyes open. Although his employer at St. Mary's may not have specified the amount of

relief time which Claimant would receive, it appears that he was sufficiently well acquainted with the general operation of the school, and with the duties of the job for which he had been in training for at least four months, to know of the demands which the job would make upon him. This being so, Claimant cannot now allege that conditions became more onerous than he had reason to believe they would be.

Moreover, Claimant has failed to support his contention that his job duties had become injurious to his health. While a claimant who seeks to show that he left his employment for necessitous and compelling health reasons is not always required to prove that he was advised by his physician to terminate his employment prior to doing so, *Deiss v. Unemployment Compensation Board of Review,* 475 Pa. 547, 381 A.2d 132 (1977), he must adduce *some* medical evidence to support his allegation that a physical disability justified his decision to quit. *Grimes Poultry Processing Corp. v. Unemployment Compensation Board of Review,* 31 Pa. Commonwealth Ct. 542, 377 A.2d 209 (1977). The only evidence we find in the record is Claimant's statement, unsupported by any medical record or report, that two psychiatrists had told him that he could not continue under the stress of his employment. The referee made no finding with respect to the medical evidence. It is settled beyond doubt that when the party who has the burden of proof in an unemployment compensation case fails below, we may reverse only if we find inconsistencies in the referee's findings or a capricious disregard of competent evidence; evidentiary weight of the testimony and credibility of the witnesses are within the exclusive province of the referee. *Baird v. Unemployment Compensation Board of Review,* 30 Pa. Commonwealth Ct. 118, 372 A.2d 1254 (1977). Considering the quality of the evidence we cannot say that the ref-

eree's decision to disregard it was capricious or abusive of his discretion.

Finally, Claimant argues that the condition of his employment violated the Federal Fair Labor Standards Act, 29 U.S.C. §201 et seq., and that therefore he had good cause for terminating it. Since Claimant failed to raise that issue before the referee or the Board, it is not properly before us and we shall not address it. *Zakrzewski v. Unemployment Compensation Board of Review*, 33 Pa. Commonwealth Ct. 216, 381 A.2d 503 (1978).

Accordingly, we

### ORDER

AND Now, this 26th day of July, 1978, the decision of the Unemployment Compensation Board of Review denying benefits to Mark A. Rinehart is affirmed.

