IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aleh V. Kiaturka,                          :
                    Petitioner             :
                                           :
          v.                               :  No. 314 C.D. 2017
                                           :  Submitted: August 11, 2017
Unemployment Compensation                  :
Board of Review,                           :
                    Respondent             :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge (P.)
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                          FILED: October 26, 2017

          Aleh Kiaturka (Claimant), *pro se*, petitions for review of an
adjudication of the Unemployment Compensation Board of Review (Board) denying
his application for unemployment compensation benefits.  In doing so, the Board
affirmed the Referee's determination that Claimant was ineligible for benefits under
Section 402(b) of the Unemployment Compensation Law (Law)[1] because he
voluntarily terminated his employment without cause of a necessitous and
compelling nature.  Discerning no error by the Board, we affirm.

          Claimant was employed full-time in the maintenance department by
Deaktor Development (Employer) from January 31, 2011, through August 25, 2016.
He filed an internet application for unemployment compensation benefits stating that

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b).  It provides, in relevant part, that "[a]n employe shall be ineligible for compensation for any week … [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature."  43 P.S. §802(b).

he had been discharged. The UC Service Center denied his application, finding that Claimant had voluntarily resigned without a necessitous and compelling reason. Claimant appealed. Hearings were held before a Referee on October 26, 2016, and November 10, 2016.

At the hearing, Claimant testified that Employer fired him after he refused to wear one of Employer's new shirts:

> On [August 25, 2016] I came to program the remote control…. When I arrived, I was greeted by Employer who said that I need to wear the Employer's t-shirt. I did not agree to wear the shirt because we never had the agreement that I would need to wear a shirt. [Marsha Deaktor, the executive vice president] told me that people who are not wearing the shirts are not working for the company…. I said that since the terms of employment are changing and now I'm required to wear a t-shirt, I want to talk about other terms of employment…. Nobody wants to listen to me. The conversation about the t-shirt continued and the Employer insisted on me wearing the t-shirts which was not part of the original agreement. And I waited to sort of find out my destiny. The Employer asked me to leave my keys and my instruments…. I did not get any chances.

Notes of Testimony, 11/10/2016, at 17 (N.T. __).

Employer presented the testimony of its executive vice president, president, and two staff members, who provided a different account of what transpired on the day of Claimant's separation from employment. The executive vice president testified that she showed Claimant the new shirts, and he responded that he did not want to see or wear them. At first she thought he was joking, but he insisted that he would not wear the shirts. The vice president explained to Claimant that having employees wear uniform shirts will allow Employer's clients to recognize them. According to the vice president, Claimant "[did not] want to hear it." N.T. 8. She further testified that Claimant returned his keys, stating that "[he

2

is] not wearing the shirt and if [she made him] wear the shirt then [he quits]." N.T. 8. Claimant walked out of the office and did not return or call in.

The vice president's testimony was corroborated by the testimony of the two staff members, who were present during the conversation. One staff member further testified that she emailed Claimant a few hours after the incident, telling him that she was sorry to hear that he quit and that she would need his timesheet to process his final payroll. A copy of the email correspondence was submitted into the record. Employer also submitted a memorandum dated February 5, 2016, addressed to all maintenance employees regarding the company's new dress code.

The president of the company also testified. He stated that he called Claimant a few days after the incident and asked him to continue his employment with Employer. Claimant declined. The president testified that "[he had] dealt with [Claimant] for 10 years," and this was not the first time Claimant had quit. N.T. 16.

Claimant testified that the email correspondence from the staff person was fabricated and that he was surprised by its content because he never intended to quit. Claimant also explained that the memorandum to employees on the dress code must have been backdated because he had never seen it before. Finally, Claimant did not dispute the president's testimony but responded that the president was not the decision-maker in the company. N.T. 19.

By decision of November 16, 2016, the Referee denied Claimant's claim for benefits. The Referee held that Claimant voluntarily resigned from his job without "necessitous and compelling" cause under Section 402(b) of the Law, 43 P.S. §802(b). The Referee explained that Employer's requirement that Claimant wear a company shirt was a reasonable modification of the terms of Claimant's

3

employment, and Claimant did not show that a reasonable person would have quit under the same circumstances.

Claimant appealed, arguing that the Referee's findings were not supported by the evidence and that forcing him to wear the company shirt was "discriminating and unsafe for [him] and depressing [his] right of freedom to free expression." Certified Record, Item 18, Petition for Appeal at 1. On review, the Board adopted the Referee's findings of fact and conclusions of law and affirmed the Referee's order. Finally, the Board found that Claimant waived his freedom of expression claim because he did not raise it at the Referee's hearing. Claimant now petitions for this Court's review.[2]

On appeal, Claimant argues that the Board's finding that he voluntarily resigned from his employment is supported not by substantial evidence but, rather, by "false statements, fraud and backdated documents without [his] signature."[3]

---

[2] Our scope of review is to determine whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. *Seton Company v. Unemployment Compensation Board of Review*, 663 A.2d 296, 298 n.2 (Pa. Cmwlth. 1995).

[3] Claimant attached several documents to his petition for review, including weekly job sheets; a memo; a tenant lease renewal; a March 14, 2013, letter; a residential lease agreement; pay statements; invoices; and a statement dated August 26, 2016. None of these documents are in the certified record. The Board filed a motion to strike the extra-record evidence, to which Claimant did not respond. By order dated May 15, 2017, this Court granted the Board's motion.

Claimant now asserts in his brief that "[t]his step of [the Board] is clear showing inten[t] to support only Employer … facts and completely ignoring and erasing [Claimant's] facts." Claimant Brief at 9. He further asserts that all of his facts and documents are "real and on file of Employer," but Employer did not introduce them to the Referee in order "to hide [its] true motivation and leaving for [Claimant] no other alternative." *Id.* Claimant's assertion is devoid of merit. Pennsylvania Rule of Appellate Procedure 1951(a) prescribes the elements of the record that must be certified to this Court upon the filing of a petition for review. It states:

Claimant Brief at 8. Claimant contends that, contrary to the Board's finding, he was discharged when Employer's executive vice president asked him to leave his keys and tools. Claimant further argues that the Board erred by concluding that he waived his freedom of expression claim.

In his first issue, Claimant argues that the Board erred. He claims that the Board's finding that he voluntarily resigned from his employment is not supported by substantial evidence.

A claimant has the burden of proving that his separation from employment was a discharge. *Key*, 687 A.2d at 412. A determination of whether a claimant's separation from employment was a voluntary resignation or a discharge is made by examining the facts surrounding the cessation of employment. *Id.* Such determination is a question of law to be made based upon the Board's findings. *Pennsylvania Liquor Control Board v. Unemployment Compensation Board of Review*, 648 A.2d 124, 126 (Pa. Cmwlth. 1994).

---

Where under the applicable law the questions raised by a petition for review may be determined by the court in whole or in part upon the record before the government unit, such record shall consist of:

(1) The order or other determination of the government unit sought to be reviewed.

(2) The findings or report on which such order or other determination is based.

(3) The pleadings, evidence and proceedings before the government unit.

PA. R.A.P. 1951(a). None of the documents attached to Claimant's petition for review were submitted at the hearing before the Referee; accordingly, this Court is precluded from reviewing them. *Pottorff v. Unemployment Compensation Board of Review*, 681 A.2d 244, 247 (Pa. Cmwlth. 1996). Further, Employer has no obligation to submit documents favorable to Claimant; instead, Claimant has the burden of proving that his separation from employment was a discharge. *Key v. Unemployment Compensation Board of Review*, 687 A.2d 409, 412 (Pa. Cmwlth. 1996).

It is well established that the Board's findings of fact "are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings." *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 831 (Pa. 1977). Substantial evidence has been "defined as such relevant evidence which a reasonable mind might accept as adequate to support a conclusion." *Philadelphia Gas Works v. Unemployment Compensation Board of Review*, 654 A.2d 153, 157 (Pa. Cmwlth. 1995). This Court's duty is "to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony, to see if substantial evidence for the Board's conclusion exists." *Taylor*, 378 A.2d at 831.

Applying the above principles, we conclude that the Board's finding that Claimant voluntarily resigned is supported by substantial evidence. Employer's executive vice president testified that when she showed Claimant the new shirt he refused to wear it; threatened to quit; returned his keys; and walked out. Two other employees who witnessed this exchange corroborated the vice president's account. Employer's president testified that Claimant declined to continue his employment when he called Claimant at his residence and asked him to stay. Claimant did not dispute the president's testimony. Although Claimant insisted that he was fired, the Referee found otherwise after hearing all of the witnesses testify and observing their demeanor.

Claimant is really challenging the Referee's credibility determinations, adopted by the Board, in the face of conflicting evidence. It is well settled that when the evidence presented at the hearing is conflicting, "it is not this [C]ourt's function to balance that evidence. Questions of credibility and the resolution of evidentiary

6

conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Miller v. Unemployment Compensation Board of Review*, 405 A.2d 1034, 1036 (Pa. Cmwlth. 1979). Moreover, as the prevailing party below, Employer is entitled to the benefit of all reasonable inferences drawn from the evidence. *Taylor*, 378 A.2d at 831. That Claimant views the facts differently does not create grounds for reversal if the Board's findings are supported by substantial evidence. *Tapco, Inc. v. Unemployment Compensation Board of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Accordingly, we affirm the Board's determination that Claimant voluntarily quit his employment.

In his next issue, Claimant argues that the Board erred in holding that Claimant failed to demonstrate his resignation was "necessitous and compelling" under Section 402(b) of the Law, 43 P.S. §802(b). A claimant who voluntarily resigns from his employment bears the burden of showing that he resigned for a necessitous and compelling reason in order to be eligible for unemployment compensation benefits. *Stiffler v. Unemployment Compensation Board of Review*, 438 A.2d 1058, 1060 (Pa. Cmwlth. 1982). A claimant can meet this burden by showing

> that circumstances existed which produced real and substantial pressure to terminate employment; such circumstances would compel a reasonable person to act in the same manner; the claimant acted with ordinary common sense; and the claimant made a reasonable effort to preserve her employment.

*Collier Stone Company v. Unemployment Compensation Board of Review*, 876 A.2d 481, 484 (Pa. Cmwlth. 2005).

Claimant argues that Employer's requirement that he wear a company shirt was a change in working conditions. Cause of a necessitous and compelling

7

nature may exist where an employer has instituted an unreasonable, unilateral change in the employment agreement, *Stiffler*, 438 A.2d at 1060, but mere dissatisfaction with reasonable modifications in working conditions does not constitute good cause for a voluntary quit. *Id.* Claimant may dislike the idea of wearing a company shirt; however, he presented no evidence to show that the job modification was so unreasonable that it would compel a reasonable person under like circumstances to quit his employment. *Collier Stone Company*, 876 A.2d at 484. Nor did he make a reasonable effort to preserve his employment. *Id.* The Board, therefore, did not err in denying Claimant benefits under Section 402(b) of the Law.

Finally, Claimant argues that the Board erred by concluding that he waived his claim that Employer's new uniform policy infringed on his right to freedom of expression. Claimant did not raise this issue at the Referee's hearing. It is well settled that an issue is waived when a claimant fails to raise it before the referee. *Dehus v. Unemployment Compensation Board of Review*, 545 A.2d 434, 436 (Pa. Cmwlth. 1988). Section 703 of the Administrative Agency Law further provides that a party who proceeded before a Commonwealth agency under the terms of a particular statute may not raise upon appeal any question, other than the validity of the statute, that was not raised before the agency unless allowed by this Court upon due cause shown. 2 Pa. C.S. §703(a); *Placid v. Unemployment Compensation Board of Review*, 427 A.2d 748, 750 (Pa. Cmwlth. 1981). Because Claimant could have raised the free expression argument before the Referee but failed to do so, we conclude that the Board did not err by finding that issue waived.

For all of the foregoing reasons, we affirm the Board's decision.

_____
MARY HANNAH LEAVITT, President Judge

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aleh V. Kiaturka, : 
               Petitioner : 
                : 
           v. : No. 314 C.D. 2017 
                : 
Unemployment Compensation : 
Board of Review, : 
               Respondent : 

## O R D E R

AND NOW, this 26th day of October, 2017, the order of the Unemployment Compensation Board of Review dated January 31, 2017, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge