Joseph C. Lozaro, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued June 4, 1985, before Judges CRAIG and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Joel M. Scheer, Fishbone, Refowich & Scheer,* for petitioner.

No appearance for respondent.

*Michael F. Healy, Newman & Holtzinger, P.C.,* with him, *Bruce F. Bratton, Connelly, Martsolf & Reid,* for intervenor, Harsco Corporation.

OPINION BY JUDGE COLINS, August 29, 1985:

Joseph C. Lozaro (petitioner)[1] appeals an order of the Pennsylvania Unemployment Compensation Board of Review, affirming a referee's decision denying him benefits under the provisions of Section 402 (d) of the Pennsylvania Unemployment Compensation Law (Law).[2]

---

[1] The union involved in this appeal is the United Steelworkers of America Local 1079. Joseph C. Lozaro became the token petitioner by way of a Test Claim Agreement. The remaining test claimants were: John R. Grucela, Joseph A. Cicero, Bradley L. Hall and Leroy A. Spence. The Test Claim Agreement further provided that the final decision in this matter constitutes precedent for the disposition of similar claims for benefits filed by other employees or members of Local 1079.

[2] Section 402(d) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(d) provides:

An employee shall be ineligible for compensation for any week—

. . .

(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed: Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute

Petitioner was employed by Manganese Steel, a division of Harsco Corporation (employer) for a period of 18-1/2 years, and is a member of Local 1079 of the United Steel Workers of America (Union). A collective bargaining agreement existed between the employer and the union with an effective date of September 1, 1980 and an expiration date of August 31, 1983.

On September 1, 1983 at 7:00 A.M., petitioner and 195 other union members commenced a work stoppage due to a labor dispute.[3] Peaceful picket lines were set up at the site of the labor dispute and continued throughout the period of the strike. However, neither the petitioner nor any other union members made any attempt to report for work during the period of the strike, even though continuing work was available to them under the same terms and conditions of the expired collective bargaining agreement,[4] and even though the gates were never locked at the employer's plant.

Prior to the strike, the employer announced that two of its divisions, including the Manganese Steel

which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute.

[3] In addition to affecting the Manganese Steel Division, this work stoppage also affected the Taylor-Wharton Division and the IKG Industries Division of employer. The strike site was located in Easton, Pennsylvania and involved all three divisions.

[4] Referee's finding of fact #12 reads as follows:
Continuing work was available to the claimant and the other members of the Union under the same terms and conditions of the expired collective bargaining agreement on September 1, 1983.

Division, would be closing due to economic circumstances.[5] As a result of this announcement, an agreement was entered into by the Union and the employer whereby the employees of the affected division would have the right to "bump into" position with a third division of employer.[6]

Petitioner filed for unemployment benefits with the Office of Employment Security (OES). The OES denied benefits to petitioner under the provisions of Section 402(d) of the law. The referee affirmed the decision of the OES and petitioner appealed to the Board. On January 23, 1984, the Board adopted the referee's determination and affirmed his decision. The petitioner filed a request for reconsideration, which was granted on February 17, 1984.[7] On May 24, 1984, the Board reinstated its order dated January 23, 1984, and reaffirmed the decision of the referee. This appeal followed.

"This Court has held that where a work stoppage takes the form of a strike and a constructive lockout is alleged, the employees have the burden to demonstrate their willingness to maintain the status quo and the employer's refusal to do so." *Grzech v. Unemployment Compensation Board of Review*, 56 Pa. Commonwealth Ct. 9, 14, 423 A.2d 1364, 1367 (1981) (citations omitted). In addition, a determination of which

---

[5] The announcement was made in July, 1983, two months prior to the expiration of the collective bargaining agreement. The employer announced the shutdown of Manganese Steel and IKG Industries due to the lack of demand for the products they produced, with a tentative closing date of October 30, 1983.

[6] Employees would bump into positions with the Taylor-Wharton Division on the basis of seniority in the event that the two target divisions closed down.

[7] As a result of granting the request for reconsideration, the Board vacated its prior order and scheduled hearings for oral argument.

side, union or management, first refused to continue operations under the status quo *after the contract had technically expired,* but while negotiations were continuing, must be made in order to conclude whether a work stoppage was the result of a strike or lockout. *Centennial School District v. Unemployment Compensation Board of Review,* 56 Pa. Commonwealth Ct. 86, 424 A.2d 569 (1981).

Petitioner alleges that the employer changed the status quo *prior* to the expiration of the collective bargaining agreement by offering to alter the benefit package[8] in exchange for a new agreement, and he cites *Norwin School District v. Unemployment Compensation Board of Review,* 80 Pa. Commonwealth Ct. 67, 471 A.2d 904 (1984), to support his proposition. In *Norwin,* our court determined that the status quo had been altered prior to the expiration of the agreement because the employer unilaterally implemented changes to the benefit package.[9] In the matter *sub judice,* the employer merely *offered* a change during negotiations. Furthermore, the employer offered to extend the collective bargaining agreement 30 days after its expiration without concessions.

The petitioner also alleges, in the alternative, that two of the employer's divisions were to be deemed shut down as of October 1, 1983; therefore, employees should have been granted benefits. Nothing in the record indicates that a shutdown occurred. Furthermore, there was an agreement that would have pro-

---

[8] This offer included a change in dental and prescription plans, and cost of living adjustments.

[9] Although maintenance of the status quo is the usual standard applied to labor disputes, in *Norwin,* alteration of the benefit package had the effect of breaching the contract; therefore, the employer was required to restore the status quo, rather than maintain it, by reinstating the previous package in order to avoid a lock out.

vided continuing employment for employees of the affected divisions.

Benefits are properly denied when evidence supports findings that the unemployment was the result of a work stoppage resulting from a labor dispute in which the claimants participated other than a lockout, rather than from a shortage of work, although contrary evidence was also received. Questions of credibility are for the factfinder, not the reviewing court. *Grove v. Unemployment Compensation Board of Review*, 49 Pa. Commonwealth Ct. 471, 411 A.2d 577 (1980).

A review of the record indicates that the Referee chose to believe the employer's witness in several key areas. The record contains sufficient evidence to support the Referee's finding that no attempt was made by the Union to maintain the status quo and that its members' unemployment was due to a strike, rather than a lockout.

Accordingly, the decision of the Board must be affirmed.

ORDER

AND Now, August 29, 1985, the order of the Unemployment Compensation Board of Review, dated May 24, 1984, at No. B-226278-B is hereby affirmed.

Judge BARRY did not participate in the decision in this case.

