IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jessica McWells,                          :
                        Petitioner        :
                                          :
              v.                          :
                                          :
Unemployment Compensation                 :
Board of Review,                          :    No. 2208 C.D. 2014
                        Respondent        :    Submitted: June 5, 2015


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                               FILED: July 30, 2015


          Jessica McWells (Claimant) petitions this Court, pro se, for review of the

Unemployment Compensation (UC) Board of Review's (UCBR) October 9, 2014

order affirming the Referee's decision denying Claimant UC benefits under Sections

402(b) and 401(d)(1) of the UC Law (Law).[1]  Essentially, Claimant presents one issue

for this Court's review: whether Claimant had a necessitous and compelling reason

for leaving her employment.  After review, we affirm.

          Claimant was last employed full-time as a clinical reviewer with Novitas

Solutions, Inc. (Employer) beginning September 4, 2012, and ending December 27,

2013.  Employer has a policy which prohibits employees from collecting short-term

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 802(b) (relating to voluntary separation), 801(d)(1) (relating to able and available for work requirement).

disability and tuition reimbursement simultaneously. Employer has a practice of reassigning work when an employee is out on leave; however, if the work is still incomplete when the employee returns, it may be reassigned back to the employee. While absent from work on short-term disability, Claimant continued her schooling to earn a Master of Business Administration (MBA) degree. During that time, Claimant's original supervisor Diane O'Hare (O'Hare) told Claimant that she did not believe employees could receive both short-term disability and tuition reimbursement, and that she would try to get Claimant's short-term disability benefits denied. Claimant returned to work from her medical leave on October 11, 2013, and was assigned a new supervisor Christine Tripoli (Tripoli). Tripoli reassigned Claimant her pre-leave work.

Claimant complained to Human Resources (HR) that her supervisors[2] were harassing her. On the morning of December 27, 2013, Claimant fell in the bathroom at work, but did not immediately realize that she had sustained an injury. On that same morning, Claimant received an email from her supervisor related to a work reassignment. Claimant suffered a panic attack and left work before the end of her shift, at approximately 9:00 a.m., without informing Employer that she was leaving.

On December 30, 2013, Claimant was treated at Med Express and placed on restricted work duty with no bending or stooping, kneeling, pulling, pushing or reaching, and no lifting or carrying more than five pounds. Because Claimant's employment as a clinical reviewer was a desk job, those restrictions did not prevent her from performing the normal duties of clinical reviewer. Thus, Claimant was

---

[2] Claimant's alleged harassment primarily concerns O'Hare's discussions regarding Employer's policy prohibiting receipt of both short-term disability and tuition reimbursement, and Tripoli's reassignment of Claimant's pre-leave work.

physically capable of returning to work following her December 30, 2013 Med Express visit.

However, Claimant did not return to work. Instead, she filed for short-term disability benefits and UC benefits. Claimant informed Employer's short-term disability carrier National Employee Benefits Administration (NEBA) that she was unable to return to work. Claimant was approved and NEBA paid her short-term disability from December 28, 2013 through February 25, 2014. Thereafter, Employer discovered that while Claimant was absent from work on short-term disability she attended school and obtained tuition reimbursement. NEBA subsequently notified Claimant that the short-term disability from January 4, 2014 through February 22, 2014 was retroactively denied and that the distributed amounts would be recouped from her regular wages.

On February 21, 2014, the Indiana UC Service Center issued a determination finding Claimant not eligible for UC benefits under Section 402(b) of the Law. Claimant appealed and, on April 7, 2014, a Referee hearing was held. On April 10, 2014, the Referee affirmed the UC Service Center's determination as modified, finding Claimant not eligible for UC benefits under both Sections 402(b) and 401(d)(1) of the Law. Claimant appealed to the UCBR and requested that she be permitted to produce documents she was not permitted to introduce at the Referee hearing.[3] On July 10, 2014, the UCBR ordered a remand hearing for Claimant to admit her documents into the record. On August 26, 2014, the Referee held the remand hearing. On October 9, 2014, the UCBR adopted and incorporated the Referee's findings of fact and conclusions of law, and affirmed the Referee's April 10, 2014 decision. Claimant appealed to this Court.[4]

_____

[3] Claimant was not permitted to introduce her documents at the first hearing because she failed to submit them in advance as required for telephone hearings.

[4] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by

3

Claimant first argues that she had a necessitous and compelling reason for leaving her employment.

> Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review. A claimant who voluntarily quits his employment bears the burden of proving that necessitous and compelling reasons motivated that decision. In order to establish cause of a necessitous and compelling nature, a claimant must establish that (1) circumstances existed that produced real and substantial pressure to terminate employment, (2) like circumstances would compel a reasonable person to act in the same manner, (3) the claimant acted with ordinary common sense, and (4) the claimant made a reasonable effort to preserve her employment.

*Middletown Twp. v. Unemployment Comp. Bd. of Review*, 40 A.3d 217, 227-28 (Pa. Cmwlth. 2012) (citations omitted). Further,

> [t]o establish health as a compelling reason for quitting a job a claimant must: (1) offer competent testimony that adequate health reasons existed to justify termination; (2) have informed the employer of the health problem; and (3) be available, where a reasonable accommodation is made by the employer, for work which is not inimical to h[er] health.

---

substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013). "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Pittsburgh, Dep't of Pub. Safety v. Unemployment Comp. Bd. of Review*, 927 A.2d 675, 676 n.1 (Pa. Cmwlth. 2007) (quotation marks omitted). This Court has held:

> In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, in this case, the Employer, giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

*Karwowski v. Unemployment Comp. Bd. of Review,* 74 A.3d 1179, 1184 (Pa. Cmwlth. 2013) (quoting *Ridley Sch. Dist. v. Unemployment Comp. Bd. of Review,* 637 A.2d 749, 752 (Pa. Cmwlth. 1994)).

> Here, the Referee opined:
>
> [C]laimant acknowledges that she did not leave work on December 27, 2013 as a result of the fall in the bathroom[,] but rather because she suffered a panic attack after receiving an email concerning the reassignment of work. [C]laimant testified that following her visit to Med Express, she was physically able to return to her job as a clinical reviewer because it is a desk job. **[C]laimant did not provide any other testimony or evidence concerning other medical issues that would have prevented her from performing her normal job functions**. [C]laimant argues that she did not return to the job because of the harassment by her supervisor. **[C]laimant has failed to demonstrate a bona fide injury that prevented her from performing her regular work duties and has failed to provide testimony or evidence to substantiate that she was subjected to an intolerable work environment**. Consequently, [C]laimant has failed to demonstrate cause of a necessitous and compelling nature for voluntarily leaving her employment with [Employer] and her request for [UC] [b]enefits must be denied in accordance with Section 402(b) of the Law.

Referee Dec. at 2-3 (emphasis added). The UCBR ordered a remand hearing for the express purpose of "permit[ting] [C]laimant to submit her documents into the record as well as to fully develop the record with regard to the merits of the case." Original Record Item No. 24; UCBR Hearing Order.

At the remand hearing, Claimant submitted her own testimony, emails she had sent to her supervisors and Employer's HR department regarding her work complaints, Claimant's therapist's notes regarding Claimant's feelings regarding her work environment, Claimant's Equal Employment Opportunity Commission (EEOC)

5

complaints,[5] and the last two pages of a 15-page report that Claimant referred to as Employer's independent medical evaluation (IME) from a psychiatrist.[6] The UCBR,

> in giving consideration to the entire record of the prior proceedings, **including the testimony and/or evidence submitted at the [r]emand hearing**[], conclude[d] that the determination made by the Referee is proper under the [Law] as interpreted by the appellate courts. **The [UCBR] specifically [found] and conclude[d] that [C]laimant is not credible**.

UCBR Dec. at 1 (emphasis added).

Claimant contends she had a necessitous and compelling reason for leaving her employment because Employer was aware that Claimant was working in a hostile work environment and failed to rectify the situation. Specifically, Claimant maintains that her supervisors were harassing her. Claimant's primary complaints of harassment were that her short-term disability was denied retroactively because she requested tuition reimbursement for the same time period, and she was reassigned her own work when she returned from a medical leave. However, based upon this record, Claimant's supervisors' conduct was in accordance with Employer's policies.

> While we agree with [Claimant's] contention that unjustified retaliatory harassment may constitute reason of a necessitous and compelling nature, it is also well established that **neither a disagreement with an employer's policies, nor dissatisfaction with working conditions centering around differences with the employer, is a compelling cause for the voluntary cessation of employment.**

---

[5] Notably, Claimant's first EEOC complaint was filed in May 2013. Her second EEOC complaint was filed in May 2014, five months after Claimant filed for UC benefits. As of the date of the remand hearing, there had been no determination regarding either complaint.

[6] Claimant testified that she did not submit the first 13 pages because "[e]verything else is personal." Notes of Testimony, August 26, 2014 at 30. Notably, the report is dated July 7, 2014, two months after Claimant applied for UC benefits.

*Davis v. Unemployment Comp. Bd. of Review*, 524 A.2d 1033, 1035 (Pa. Cmwlth. 1987) (emphasis added). Employer's Benefits Coordinator Schwanna Weston testified regarding the short-term disability as follows:

> E[mployer's] L[awyer] And was there any reason why [Claimant] was not qualified during any of this period of time for the short-term disability medical leave?
>
> E[mployer's] W[itness] 2 Yes she was attending school at that time.
>
> EL And why is that a problem?
>
> EW2 You can't receive two benefits from [Employer] which is short-term disability and tuition reimbursement at the same time.
>
> EL And is that stated in writing in any policy?
>
> EW2 Yes it's under the short-term disability policy.
>
> EL And is NE[B]A[,] your third-party administrator[,] aware of that?
>
> EW2 Yes they are.
>
> EL So when someone asks for tuition reimbursement under your policy does that come to the Benefits Department that you belong to?
>
> EW2 Yes.
>
> EL And if you see someone is receiving reimbursement or asking for reimbursement under the tuition reimbursement policy . . . does that effect [sic] short-term disability? Do you do anything about that?
>
> EW2 Yes we notify NE[B]A that the employee is attending school . . . [and direct that] . . . they . . . go and retro [sic] deny that employee.

Notes of Testimony (N.T.), April 7, 2014 at 44-45.

Employer's Employer Relations Consultant Shemika DeVan (DeVan) expressly testified regarding the work reassignment that "anytime someone goes on a

7

leave of absence[,] the work is reassigned and then[,] once the employee returns to work[,] if that work has not been completed[,] it's reassigned back to the employee so that employee has work to do when they return from a leave of absence." N.T., April 7, 2014 at 41. "Credibility determinations are for the fact-finder and not for the reviewing court." *Davis*, 524 A.2d at 1035. Here, the UCBR specifically "[found] and conclude[d] that [C]laimant [was] not credible." UCBR Dec. at 1. Further, "[a]n examination of the record reveals that there is substantial evidence to support the [R]eferee's findings that [Employer's policies] were imposed [properly] and [Claimant was not subjected to an intolerable work environment]." *Davis*, 524 A.2d at 1035.

With respect to what constitutes a hostile work environment for the purpose of a necessitous and compelling reason to quit one's employment, this Court has, opined:

> . . . *Porco v. Unemployment Compensation Board of Review,* 828 A.2d 426 (Pa.[]Cmwlth.[]2003), and *Willet v. Unemployment Compensation Board of Review,* . . . 429 A.2d 1282 ([Pa. Cmwlth.] 1981), . . . reiterate[] that **profanity in the workplace, abusive conduct and unjust accusation give rise to a hostile work environment that may provide cause of a necessitous and compelling nature to quit**, although a claimant must act in a common sense manner to eliminate the problem so as to avoid quitting. In *Porco* the claimant was subjected to abusive conduct and profanity from his sales manager but did not contact upper level management to complain, thereby failing to exhaust all possible alternatives before he quit. He was denied benefits. In *Willet* the claimant was subjected to profanity, ridicule of her physical appearance and insults to her intelligence over a four-month period by her supervisor. The Court concluded that the claimant's resignation was consistent with ordinary common sense due to the conditions.

*W. & S. Life Ins. Co. v. Unemployment Comp. Bd. of Review*, 913 A.2d 331, 337 (Pa. Cmwlth. 2006) (emphasis added). Clearly, Claimant's supervisors' enforcement of Employer's policies did not rise to the level of a hostile work environment.

Notwithstanding, because Claimant never returned to the office, Claimant does not know what, if anything, Employer would have done to rectify her perceived hostile work environment. DeVan testified regarding Claimant's complaints that

> [Employer] did a full investigation and [Employer] mentioned to [Claimant] that when she returned to the office [Employer] would be providing [Claimant] the outcome of the investigation findings. That [Employer] would not be having those discussions while [Claimant is] on approved leave of absence. Once [Claimant] returns to the office [Employer] would have those discussions.

N.T., April 7, 2014 at 40. Thus, because Claimant did not return to work and discuss the investigation with Employer, Claimant did not meet her burden of proving she had a necessitous and compelling reason to quit her employment. *See Gioia v. Unemployment Comp. Bd. of Review,* 661 A.2d 34 (Pa. Cmwlth. 1995) (wherein this Court affirmed the UCBR's conclusion that the claimant failed to meet the test of what constitutes a necessitous and compelling reason to voluntarily quit where he refused the employer's further efforts to correct the situation).

Claimant also asserts that the intolerable working environment was detrimental to her health. In addition to her testimony regarding her health, Claimant introduced the first page of a 3-page letter purportedly from her therapist[7] which stated, in relevant part: "[**Claimant] really feels** at this point that she is not able to go back to work because she may have a panic attack and that is too anxiety[-

---

[7] The first page was printed on "Premier Medical Associates" letterhead. Because the last two pages were not presented, there is no signature or title of the author of the letter. N.T., August 26, 2014, Cl. Ex. 3.

]provoking." N.T., August 26, 2014, Cl. Ex. 3 (emphasis added). Page 1 of the therapist's letter contains only recitations of Claimant's opinions that she cannot work, but not the therapist's opinion regarding whether Claimant can work. *Id.* Claimant also introduced pages 14 and 15 of the report purportedly from Employer's IME doctor[8] which contained the following:

> **Based upon the available documentation and the psychiatric interview with [C]laimant, I am unable to identify specific emotional and cognitive impairments that would wholly prevent or seriously limit [C]laimant's ability to work at this time**. An occasional panic attack, however, may temporarily disrupt her cognitive functioning and ability to work but those are short lived in duration, lasting minutes not hours or days. She has some non[-]panic anxiety which is also situational in onset and should not significantly impair her ability to function at work. Depressive symptoms are not severe, especially as of the time of this examination, and do not impair her or other functioning. They are a source of distress to her, however, relating to her parents' alcoholism. **I do not identify work restrictions or necessary accommodations for her to be able to perform adequately at work from a psychiatric perspective. She repeatedly indicated in the interview that she would not have impairments in functioning at work at this time[,] though insists that her employer attempt to resolve her complaints and cease their alleged retaliation against her**.

N.T., August 26, 2014, Cl. Ex. 7 (emphasis added). The conclusions contained on pages 14 and 15 of the report are contrary to Claimant's position.

The record evidence does not constitute the requisite competent proof that adequate health reasons existed to justify Claimant voluntarily terminating her

---

[8] As only the conclusions and the signature page were submitted, all that can be confirmed is that the letter was authored by Robert M. Wettstein, M.D. (Dr. Wettstein), and that Dr. Wettstein is "Board Certified in Psychiatry and Forensic Psychiatry." N.T., August 26, 2014, Cl. Ex. 7.

employment, or that returning to work would be inimical to her health. Viewing the evidence in the light most favorable to Employer, as we must, it is clear that Claimant was upset that her short-term disability was retroactively denied and that she was reassigned her previously-assigned work and, as a result, she chose not to return to work.

> The law is well-established that

> [a]ll credibility determinations are made by the [UCBR]. The weight given the evidence is within the discretion of the factfinder. The [UCBR] is the ultimate factfinder. The [UCBR] determined that Claimant voluntarily left h[er] employment [without a necessitous and compelling reason]. A review of the record reveals that the [UCBR's] findings were supported by substantial evidence.

*Spadaro v. Unemployment Comp. Bd. of Review*, 850 A.2d 855, 860 (Pa. Cmwlth. 2004) (citations omitted). Accordingly, we hold that Claimant is not eligible for UC benefits under Section 402(b) of the Law.[9]

For all of the above reasons, we affirm the UCBR's order.

_____
ANNE E. COVEY, Judge

---

[9] Having determined that Claimant was not eligible for UC benefits under Section 402(b) of the Law, we need not address whether Claimant was eligible for benefits under Section 401(d)(1) of the Law.

Jessica McWells,                          :
                          Petitioner      :
                                          :
             v.                           :
                                          :
Unemployment Compensation                 :
Board of Review,                          :        No. 2208 C.D. 2014
                          Respondent      :

## O R D E R

AND NOW, this 30th day of July, 2015, the Unemployment Compensation Board of Review's October 9, 2014 order is affirmed.

 

_____
ANNE E. COVEY, Judge